UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| RONEY HARRIS, | : | |
| | : | |
| Plaintiff, | : | NO. 3:06CV133 (MRK) |
| | : | |
| v. | : | |
| | : | |
| UNITED TECHNOLOGIES | : | |
| CORPORATION, PRATT & WHITNEY | : | |
| AIRCRAFT DIVISION, | : | |
| | : | |
| Defendant. | : | |

## **RULING AND ORDER**

*Pro se* plaintiff Roney Harris sues United Technologies Corporation, Pratt & Whitney Aircraft Division ("Pratt & Whitney") for its alleged refusal to hire him in 2004. Mr. Harris has previously litigated employment-related claims against Pratt & Whitney. *See Harris v. United Techs. Corp., Pratt & Whitney Div.*, No. 3:93cv1212 (JBA). In his prior action against Pratt & Whitney, Mr. Harris asserted that the company had discriminated and retaliated against him in connection with his layoff from Pratt & Whitney in 1991. Following a bench trial, Judge Janet Bond Arterton found that Mr. Harris had not shown either racial discrimination or retaliation in his layoff. *Id.*, Opinion & Order [doc. # 149] (D. Conn. Aug. 27, 1997). The Second Circuit thereafter affirmed. *Harris v. United Techs. Corp., Pratt & Whitney Div.*, 165 F.3d 13 (2d Cir. 1998).

In this action, Mr. Harris alleges that in 2004, he asked Pratt & Whitney to rehire him and that the company refused to do so because of his race, age, and national origin and also in retaliation for his previous lawsuit against the company. Following discovery, Pratt & Whitney has now moved

for summary judgment [doc. # 38]. For the reasons stated below, the Court GRANTS Pratt & Whitney's motion.

## I.

Judge Arterton's opinion in Mr. Harris' previous case sets forth at length the history of Mr. Harris' work for Pratt & Whitney and his layoff in 1991. The Court will not repeat those facts here, but will instead focus on the events that led to the current action. As is required on a motion for summary judgment, the Court relates the facts in the light most favorable to Mr. Harris.

On May 6, 2004, Mr. Harris sent the following letter to Pratt & Whitney:

Dear Sir:

As you know, I was separated from employment at UTC Pratt & Whitney as a result of a reduction in force, and your records reflect that I was eligible for rehire. Further, the company promised I would be considered for any and all available and new HR positions. Based upon that promise and commitment, I would like to be considered for rehire to any available and future openings. As I have not heard from the company to date, I am interested in knowing the status of my rehire. I can be reached at the following address and telephone number . . . .

Memorandum of Law in Support of Defendant's Motion for Summary Judgment [doc. # 39] ("Defendant's Mem."), Ex. E. When he did not hear back from Pratt & Whitney, Mr. Harris sent a second letter to the company on July 14, 2004 to "ascertain [his] rehire status with the company." *Id.*, Ex. C. The letter stated that he had not yet heard from the company and asked to be considered for "immediate placement to any and all available and new HR positions, as well as any other positions that are commensurate with my background skills and qualifications." *Id.* Each letter was sent to Pratt & Whitney by certified mail.

At some point, Mr. Harris also submitted his resume to Pratt & Whitney,[1] because on September 7, 2004, the company sent Mr. Harris a letter thanking him for submitting his resume. *Id.*, Ex. E. The letter went on to state as follows:

> However, in order to be sure your resume accurately goes into our database for consideration for current or future positions, we ask that you please visit our website at www.prattcareers.com to apply directly on-line. You can view any open positions or submit your resume to our database on this page . . . . Thank you again for your interest in Pratt & Whitney . . . .

*Id.* Requiring Mr. Harris to apply on-line for any open positions was consistent with the policy the company had adopted in January 2004. *See id.*, Ex. F. As explained in the email announcing the policy:

> In an effort to enhance the candidate experience and ensure we are meeting OFCCP requirements, Pratt & Whitney is driving all resumes through our corporate careers web site . . . and will no longer accept unsolicited electronic or paper resumes.
>
> Attached below is a standard email for your use in responding to unsolicited resumes that come into your office. After you respond to the candidate, you do not have to keep the resume or the email that was sent by the candidate.
>
> The online process allows Pratt and Whitney to better track and report all resumes received. The process also benefits the candidate by allowing them to apply for a specific position, yet remain in the database and be considered for other open positions.

*Id.*

At his deposition, Mr. Harris acknowledged that he did not apply online for any position at Pratt & Whitney, as requested in the September 7 letter. According to Mr. Harris, he did not believe that he needed to use the company's database to apply for positions because he had been "promised

---

[1] Mr. Harris attaches to his brief as Exhibit I a June 22, 2004 letter from Mr. Harris to Sikorsky Aircraft Corporation, another division of United Technologies Corporation. It is not clear to the Court whether this is the means by which Mr. Harris' resume arrived at Pratt & Whitney.

3

preferred treatment" at the time of his layoff in 1991. Harris Dep. at 81, Ex. B to Defendant's Mem.[2] Mr. Harris also conceded that after having received the September 7 letter from Pratt & Whitney, he never contacted the company to let it know that he did not believe he needed to apply online. *Id.* at 82.

Instead of applying online as he had been asked to do, Mr. Harris filed a discrimination charge against the company in January 2005 with the Connecticut Commission on Human Rights and Opportunities in January 2005. Thereafter, Mr. Harris filed this action.

## II.

The summary judgment standard is a familiar one. Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Utica College of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (internal quotation marks omitted). "The substantive law governing the case will identify those facts that are material, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Bouboulis v. Transp.*

---

[2] In his brief, Mr. Harris asserts that he did submit his resume to the Pratt & Whitney website, but that statement is directly contrary to his deposition testimony. The Second Circuit has held that a party opposing summary judgment ordinarily may not contradict his deposition testimony. *See Margo v. Weiss*, 213 F.3d 55, 60 (2d Cir. 2000); *Perma Research & Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969) ("If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact."). Mr. Harris has given no explanation for this sudden change in testimony.

4

*Workers Union of Am.*, 442 F.3d 55, 59 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (alteration in the original)).

The moving party bears the burden of demonstrating that no genuine issue exists as to any material fact, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986), and the Court must resolve all ambiguities and draw all inferences in favor of the plaintiff, *see Anderson*, 477 U.S. at 255. If the moving party carries its burden, the party opposing summary judgment "may not rest upon . . . mere allegations or denials . . . ." Fed. R. Civ. P. 56(e). Rather, the opposing party must "set forth specific facts showing that there is a genuine issue for trial." *Id.* In short, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

Where one party is proceeding *pro se*, the Court reads the *pro se* party's papers liberally and interprets them to raise the strongest arguments suggested therein. *See Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007). Despite this liberal interpretation, however, a "bald assertion, completely unsupported by evidence," cannot overcome a properly supported motion for summary judgment. *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991).

**III.**

After carefully considering Mr. Harris' claims and the evidence that he has presented, the Court believes that Pratt & Whitney is entitled to summary judgment on all of Mr. Harris' claims for two reasons.

First, as a part of his *prima facie* case of discrimination or retaliation, Mr. Harris must show that he applied for a position for which he is qualified. *See, e.g.*, *Kinsella v. Rumsfeld*, 320 F.3d 309, 314-15 (2d Cir. 2003); *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 565 (2d Cir. 2000). As the Second Circuit has explained in the context of promotions, "[A] plaintiff [must] allege that she or he applied for a position or positions and was rejected therefrom, rather than merely asserting that on several occasions she or he generally requested promotion." *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 710 (2d Cir. 1998). Here, however, the undisputed evidence shows that Mr. Harris never applied for any position at Pratt & Whitney in accordance with the methods and procedures that the company had established for processing job applications. Pratt & Whitney was entitled to decide how applicants for jobs needed to apply for them, and the company communicated its chosen procedure to Mr. Harris. Unfortunately, however, he decided (for his own reasons) not to apply for jobs online, as the company had requested. Certainly Pratt & Whitney cannot be faulted for not hiring Mr. Harris for a specific position for which he never properly applied. *Cf. id.* (affirming dismissal of failure to promote claim where employee failed to apply for specific positions using the company's "posting" system).

Second, because Mr. Harris' failure to follow the online job applications procedure set forth in the September 7, 2004 letter qualifies as a legitimate, nondiscriminatory reason for not hiring him, he must, therefore, present the Court with evidence from which a reasonable jury could conclude that the company's stated reason for not hiring him was false and that the real reason was because of his race, age, or national origin or to retaliate against him. *See, e.g.*, *Martin v. Town of Westport*, 329 F. Supp. 2d 318, 328 (D. Conn. 2004) ("[The plaintiff] also must proffer evidence from which the trier of fact could reasonably conclude that the real reason for [the employer's] action was racial

6

discrimination."); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Yet Mr. Harris has presented no such evidence.

In support of his race and national origin claims, Mr. Harris relies upon the ethnicity of individuals who were hired following his layoff in 1991. Similarly, for his age claim, Mr. Harris relies on the fact that he is over 40 and that younger individuals were purportedly hired to replace him following his 1991 layoff. But what is relevant to this action is what happened in 2004, and despite the opportunity to conduct discovery, Mr. Harris has not presented any evidence of the race or age of individuals who were hired in 2004 to fill positions for which Mr. Harris was qualified, let alone applied. Finally, insofar as his retaliation claim is concerned, Mr. Harris has not produced any evidence that the individual who sent him the September 7 letter or the individuals who hired others instead of Mr. Harris were even aware of Mr. Harris' 1990s litigation with Pratt & Whitney. Therefore, Mr. Harris has presented no evidence from which a reasonable juror could find a causal connection between his protected activity and his failure to be rehired in 2004. *See Perugini v. Stryker Orthopaedics*, No. 305CV1289 MRK, 2007 WL 601454, at *5 (D. Conn. Feb. 22, 2007) ("To make out a claim of retaliation, [the plaintiff] must first show that . . . a causal connection exists between the alleged adverse action and the protected activity.") (internal quotation marks omitted) (quoting *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 608 (2d Cir. 2006)).

Throughout his brief, Mr. Harris makes reference to alleged misrepresentations made to him at the time of his layoff and to other alleged slights and company misconduct that occurred prior to 1997, when Judge Arterton issued her ruling rejecting his first case. The Court has no doubt that Mr. Harris sincerely feels that he was mistreated by Pratt & Whitney. However, as this Court made clear in prior rulings in this case, the Court would not allow Mr. Harris in this case to re-litigate the events

7

surrounding his 1991 layoff, which he had already presented to Judge Arterton. Ruling & Order of Nov. 3, 2006 [doc. # 26]; Ruling & Order of Jan. 29, 2007 [doc. # 33]. This case is limited to what did or did not happen in 2004, and Mr. Harris simply has not presented evidence that would permit a reasonable jury to conclude that in 2004, he was discriminated or retaliated against by Pratt & Whitney.

## IV.

Therefore, the Court GRANTS Defendant's Motion for Summary Judgment [doc. # 38]. **The Clerk shall enter judgment for Defendant and close this file.**

IT IS SO ORDERED,

/s/     Mark R. Kravitz
United States District Judge

Dated at New Haven, Connecticut: **June 22, 2007**